UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

BABIECA CAPITAL, LP,

     Plaintiff,

v.

MORDECHAI COHEN,
COHEN ANYTIME, INC.,
COHEN JEWELS INC.,
IZHAK COHEN,
TONIC INVESTMENTS, LLC,
KATHERINE COHEN, and
JULIANA BUILES,

     Defendants,

_____ /

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff BABIECA CAPITAL, LP ("**Babieca**") sues Defendants MORDECHAI COHEN ("**Cohen**"), COHEN ANYTIME, INC. ("**Cohen Anytime**"), COHEN JEWELS INC. ("**Cohen Jewels**"), IZHAK COHEN ("**Izhak**") TONIC INVESTMENTS, LLC ("**Tonic Investments**"), KATHERINE COHEN ("**Katherine**"), and JULIANA BUILES ("**Builes**") (collectively, "**Defendants**"), and alleges as follows:

## INTRODUCTION

1.    Plaintiff brings this action to recover damages caused by Defendants' systematic and unlawful scheme to defraud Plaintiff of $7,500,000.00 worth of luxury watches.

2.    In late 2022, Plaintiff agreed to sell, and Cohen Anytime agreed to buy, an entire inventory of high-end and expensive watches at the agreed price of $7,500,000.00.  To date of filing this Complaint, Cohen Anytime has failed and refused to make any payment (not one single

1

dollar) to Babieca as required under the contract documents.  Additionally, the purchase was guaranteed by Cohen, the owner of Cohen Anytime, who likewise failed and refused to make any payment to Babieca for the watches.

3.     Based upon Cohen Anytime and Cohen's actions since the sale of the luxury watches - including their total refusal to make any payment for the watches and the inexplicable disappearance of the watches and gap in financial documentation about the whereabouts of or financial transactions involving the watches - it is believed that Cohen and Cohen Anytime never intended to actually pay Plaintiff $7,500,000.00 for the watches.  Instead, Cohen and Cohen Anytime, along with Cohen Jewels, Izhak, Tonic Investments, Katherine, and Builes,[1] conspired amongst themselves and formed a RICO enterprise to defraud Babieca, starting with the purchase and sale of the watches and including fraudulently converting, thieving, concealing, and transferring the watches and monies produced from their sale.

4.     Plaintiff was eventually forced to file suit against Defendants, first in Florida state court, and now this federal lawsuit, asserting federal claims, and adding parties to the RICO conspiracy.

5.     As set forth herein, Defendants have further advanced their fraud through the criminal enterprise by intentionally dissipating assets, transferring assets and operating on a cash basis to avoid any tracing of monies, thereby making guarantees/security interests uncollectible.

---

[1] JUAN PABLO HERNANDEZ ("**Hernandez**") also conspired with and/or aided and abetted Cohen Anytime and Cohen in defrauding Plaintiff and has received fraudulent transfers of funds or assets from Cohen Anytime and/or Cohen in an effort by Cohen Anytime and/or Cohen to hide monies owed to Plaintiff.  Hernandez is not yet named as a defendant in this case because he has filed for bankruptcy in an apparent effort to avoid liability.  It is anticipated that his bankruptcy case will be dismissed due to willing noncompliance with disclosure and filing requirements, and if so, at that time he will be added as a defendant in this matter.

6.      Furthermore, Cohen and Cohen Anytime also filed for bankruptcy in an attempt to shield themselves from liability.   Upon information and belief their bankruptcy filings were fraudulent and both were dismissed.

7.      Babieca requires a judgment against Defendants that cannot be discharged in a bankruptcy proceeding as Defendants have shown that they will use the bankruptcy system in an effort to avoid liability for their misconduct.

8.      This matter should also be referred to the United States Attorney Office for various crimes involving mail and wire fraud, and money laundering which are the subject of Plaintiff's Federal RICO claims.

## PARTIES, JURISDICTION, AND VENUE

9.      Babieca is a Canadian limited partnership with its principal place of business in Ontario, Canada.

10.     Cohen Anytime is a Florida corporation with its principal place of business located at 169 E. Flagler Street, Suite 716, Miami, FL 33131, and is subject to the jurisdiction of this Court.

11.     Cohen is an individual and is a resident of Miami, Florida, and is subject to the jurisdiction of this Court.  At all material times, Cohen has been the President of Cohen Anytime.

12.     Cohen Jewels is a Florida corporation with its principal place of business located at 169 E. Flagler Street, Suite 716, Miami, FL 33131, and is subject to the jurisdiction of this Court. As alleged herein Cohen Jewels conspired with and/or aided and abetted Cohen Anytime and Cohen in defrauding Plaintiff and has received fraudulent transfers of funds or assets from Cohen in an effort by Cohen Anytime and/or Cohen to hide monies or assets owed to Plaintiff.

13.     Izhak is an individual and a resident of Miami, Florida, and is subject to the jurisdiction of this Court.  Izhak is Cohen's brother, and as alleged herein, Izhak conspired with

3

and/or aided and abetted Cohen Anytime and Cohen in defrauding Plaintiff and has received fraudulent transfers of funds or assets from Cohen Anytime and/or Cohen in an effort to hide monies or assets owed to Plaintiff.

14.     Tonic Investments is a Florida limited liability company with its principal place of business located at 46 N.W. 36th Street, Miami, FL 33127, and is subject to the jurisdiction of this Court.  As alleged herein, Tonic Investments conspired with and/or aided and abetted Cohen Anytime and Cohen in defrauding Plaintiff and has received fraudulent transfers of funds or assets from Cohen Anytime and/or Cohen in an effort by Cohen Anytime and/or Cohen to hide monies owed to Plaintiff.

15.     Katherine is an individual and is a resident of Miami, Florida, and is subject to the jurisdiction of this Court.  Katherine is Cohen's daughter, and as alleged herein Katherine conspired with and/or aided and abetted Cohen Anytime and Cohen in defrauding Plaintiff and has received fraudulent transfers of funds or assets from Cohen Anytime and/or Cohen in an effort by Cohen Anytime and/or Cohen to hide monies or assets owed to Plaintiff.

16.     Builes is an individual and is a resident of Miami, Florida, and is subject to the jurisdiction of this Court.  Upon information and belief, Builes is Cohen's girlfriend, and as alleged herein Builes conspired with and/or aided and abetted Cohen Anytime and Cohen in defrauding Plaintiff and has received fraudulent transfers of funds or assets from Cohen Anytime and/or Cohen in an effort by Cohen Anytime and/or Cohen to hide monies or assets owed to Plaintiff. Builes has been Cohen's "straw person" and assisted Cohen in all fraudulent schemes and money laundering, while hiding assets, including real estate in her name. Builes has also assisted in the opening and dissolving of companies in order to avoid litigation, more specifically as president of Cohen Anytime.

17.     On information and belief, Defendants are part of a RICO criminal enterprise which they formed for the purpose of defrauding Babieca of $7,500,000.00 worth of luxury watches, and have been, and continue to be, engaged in a pattern of criminal activity, including crimes involving mail and wire fraud, and money laundering.

18.     This Court has diversity-based subject matter jurisdiction pursuant to 28 U.S.C. § 1332 since there is complete diversity among the parties, and the amount in dispute exceeds $75,000, exclusive of interest and costs.

19.     The Court also has federal question subject matter jurisdiction over the federal causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1331.

20.     The Court has supplemental jurisdiction over the Florida state law causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1367 because these claims arise out of the same nucleus of operative facts as Plaintiff's federal law claims.

21.     The Court has personal jurisdiction over Defendants because they are either residents of or maintain their principal place of business in this Judicial District.

22.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because at least one of the defendants either resides in or maintains a principal place of business in this Judicial District, and because all or a substantial part of the events giving rise to this action occurred in this Judicial District.

## GENERAL ALLEGATIONS

23.     95 Investments LLC ("**95 Investments**") and Hernandez are each 50% owners of Time and Tonic Holdings LLC ("**Time and Tonic**").

24.     On November 1, 2022, 95 Investments and Hernandez entered into a Confidential Settlement Agreement and Mutual General Release ("**Settlement Agreement**") in order to resolve

a managerial and member deadlock in the Company and to settle all disputes and disagreements with respect to Time and Tonic. The Settlement Agreement is attached as **Exhibit A**.

25.     Pursuant to the Settlement Agreement, Cohen Anytime agreed to buy and did buy Time and Tonic's full inventory of watches at the agreed price of $7,500,000.00.  An invoice of $7,500,000.00 for the purchase of Time and Tonic's full inventory of watches ("**T&T Invoice**") is attached as Exhibit 1 to the Settlement Agreement.

26.     The T&T Invoice required Cohen Anytime to pay Time and Tonic in two installments: 50% of the T&T Invoice ($3,750,000.00) by January 30, 2023 (within 90 days of the invoice date of November 1, 2022) and the remaining 50% of the T&T Invoice ($3,750,000.00) by April 30, 2023 (within 180 days of the invoice date of November 1, 2022).

27.     As part of the Settlement Agreement, Time and Tonic contemporaneously executed an Assignment and Assumption Agreement ("**Assignment**") thereby assigning the T&T Invoice to Plaintiff in conditional satisfaction of an antecedent debt due by Time and Tonic to Babieca. The Assignment is attached to the Settlement Agreement as Exhibit 2. Thus, by way of the Assignment, Cohen Anytime now owed the T&T Invoice sum to Babieca and not to Time and Tonic.

28.     At the time of execution of the Assignment, Time and Tonic owed a substantial debt to Babieca in excess of $7,500,000.00 excluding interest, late fees, attorney's fees and costs. Time and Tonic was a debtor of Babieca, and Babieca was concerned that if Time and Tonic sold its full inventory of watches to Cohen Anytime, that Babieca would no longer be able to collect against Time and Tonic on that debt.

29.     To resolve Babieca's concerns, as part of the Settlement Agreement and contemporaneous with the aforementioned Assignment, Cohen Anytime also executed a

Promissory Note in favor of Babieca, and Cohen – as 100% owner of Cohen Anytime – executed a Guaranty in favor and for the benefit of Babieca. The Promissory Note and Guaranty are attached as **Exhibits B and C** respectively (and are also attached to the Settlement Agreement as Exhibits 3 and 4 respectively).

30. The purpose of the Promissory Note and Guaranty was to assure that Cohen Anytime and/or Cohen would satisfy the debt that Cohen Anytime now owed to Babieca by way of the Assignment. The Promissory Note and Guaranty bound Cohen Anytime, with Cohen as guarantor, for the T&T Invoice amount of $7,500,000.00 with a fixed, per annum interest of 3%.

31. In addition, as part of the Settlement Agreement, Cohen Anytime also executed a Security Agreement in favor of Babieca (the secured party) whereby Cohen Anytime granted Babieca a security interest in "collateral" as defined by the Security Agreement to secure the payment and performance in full of the Promissory Note. The Security Agreement is attached as **Exhibit D** (and was attached to the Settlement Agreement as Exhibit 4).[2]

32. Neither Cohen nor Cohen Anytime paid Babieca $3,750,000.00 by January 30, 2023.

33. Neither Cohen nor Cohen Anytime paid Babieca $3,750,000.00 by April 30, 2023.

34. In accordance with the terms of the Security Agreement, Babieca sent Cohen Anytime and Cohen written notice of Cohen Anytime's default under the Promissory Note and Guaranty and made several oral and written demands for payment of all monies owed under the Promissory Note, but to no avail.

---

[2] The Settlement Agreement, T&T Invoice, Assignment, Promissory Note, Guaranty, and Security Agreement are collectively referred to as the "**Settlement Documents**".

35.     Since the execution of the Settlement Documents, Cohen Anytime and Cohen have failed or refused to make any payment to Babieca under the terms of the agreements and are therefore in material breach of the Settlement Documents and all sums due are immediately payable to Babieca.

36.     In connection with Florida state court[3] proceedings initiated by Plaintiff, Cohen Anytime turned over to Plaintiff's counsel the Concord Watch, 5 emeralds and 11 rubies as collateral for Cohen Anytime.  The items are held in trust by court order. No cash was transferred to Plaintiff, and no accounts receivable were reported or transferred to Plaintiff.[4]  Besides the foregoing, an additional watch was provided, but no further collateral has been provided or disclosed by Cohen Anytime or Cohen.

37.     Cohen Anytime also provided purported "Financial Statements". A copy of initial purported Financial Statements for Cohen Anytime, Inc. (Bates reference "COHEN_ANYTIME_INC 001-0052") ("**Initial Purported Financial Statements**") and supplemental purported Financial Statements for Cohen Anytime, Inc. as well as bank statements

---

[3] The matter is *inactive* and is case no. 2023-002294-CA-01 in Miami-Dade County Circuit Court. Defendants Katherine Cohen and Juliana Builes were never defendants in the state action. Defendants Izhak Cohen and his company Cohen Jewels were voluntarily dismissed without prejudice from the state action.  Defendant Tonic Investments was a defendant in the state case and was voluntarily dismissed without prejudice.  The only remaining defendants in the state case are Defendants Mordechai Cohen, Cohen Anytime and Juan Pablo Hernandez.  All three filed, in blatant bad faith, for bankruptcy protection either a few months before or on the eve of trial, in a concerted effort to avoid adjudication on the merits in the state case. As to Mordechai Cohen and Cohen Anytime, their bankruptcies were dismissed with a period of 180 days prohibiting refiling. The US Bankruptcy Trustee took an active role in investigating the bona fides of those bankruptcies.  Juan Pablo Hernandez's bankruptcy case remains pending but is likely to be dismissed as well for his willing noncompliance with bankruptcy requirements.  The state case will need should be closed out with respect to Defendants Cohen and Cohen Anytime.  Nothing impedes the progress of the instant case as it is expanded and states Federal claims with additional parties above and beyond the state case.

[4] Furniture in the possession of Cohen Anytime was also reported as collateral but not turned over.

(Bates reference "COHEN_ANYTIME_INC 0053-0213") ("**Supplemental Purported Financial Statements**") are attached as **Exhibits E and F**.

38.     The Initial Purported Financial Statements consisted of only the following:  (1) a one-page Balance Sheet for the period November 1, 2022 to March 21, 2023; (2) a one-page Statement of Income for the period November 1, 2022 to March 21, 2023; (3) a one-page Supplementary Schedule for the period November 1, 2022 to March 21, 2023; (4) a General Ledger printout as of March 31, 2023 which purports to cover the same period as the Balance Sheet and Statement of income; and (5) Monthly Bank Statements from Bank of America from November 1, 2022 through March 31, 2023 for the account ending in "3677."

39.     In addition to the Initial Purported Financial Statements and Supplemental Purported Financial Statements, Cohen Anytime produced two purported invoices:  Invoice #1028 dated January 7, 2023 in the amount of $200,000 issued to Tonic Investments for the purported sale of a Audemars Piguet watch, and Invoice #1029 dated February 18, 2023 in the amount of $1,040,000 issued to Tonic Investments for the purported sale of two Richard Mille watches. Invoice #1028 and Invoice #1029 ("**Purported Invoices**") are attached as **Exhibit G**.

40.     Based upon a review of the Initial Purported Financial Statements, Supplemental Purported Financial Statements, and Purported Invoices produced by Cohen Anytime, it is apparent that Cohen Anytime and Cohen, along with assistance of the other named Defendants, through the RICO criminal enterprise have engaged in a systematic and unlawful scheme to defraud Babieca, including fraudulently converting, thieving, concealing, and transferring the collateral (monies and assets) that were secured by the Security Agreement and should have been paid or transferred to Babieca in satisfaction of the Settlement Agreement.

41.     In particular, the Initial Purported Financial Statements reveal the following:

- The Initial Purported Financial Statements are grossly inadequate and do not reconcile with the General Ledger;

- There is no inventory account or detailed transaction entries;

- There is no "accounting" for the $7,500,000.00 worth of watches Cohen Anytime received on November 1, 2022 as part of the Settlement Agreement; and

- Deposits and Disbursements reflected in the Bank Statements are not consistent with the Financial Statements.

42.    In addition, the Initial Purported Financial Statements also reveal in the bank statements a number of apparent unjustified transactions or disbursements to related parties or parties that otherwise have no legitimate business dealings with Cohen Anytime, including Cohen, Izhak, Cohen Jewels, Tonic Investments (a company owned and/or controlled by Hernandez), Katherine (Cohen's daughter), and Builes (Cohen's girlfriend).  A copy of the referenced Bank Statements are attached as included as part of **Exhibit E** and **Exhibit F**.  Upon information and belief, these transactions and disbursements were fraudulently done by Defendants as part of a RICO criminal enterprise engaged in by Defendants in an effort to hinder, delay or defraud Babieca in collection of the debt owed by Cohen Anytime and Cohen as guarantor.

43.    Similarly, the Supplemental Purported Financial Statements also fail to provide basic financial information regarding the finances of Cohen Anytime, and more importantly, the whereabouts of the $7,500,000.00 worth of watches Cohen Anytime received or other assets at issue.  In particular, the Supplemental Purported Financial Statements reveal the following:

- The production by Cohen Anytime is still inadequate and is still missing key financial records like inventory records, sales records, etc;

- The supplemental documents do not tie into the bank statements already produced;

- More dissipation of company assets; and

- Highlight questionable accounting practices by Cohen Anytime.

44.    Consistent with their pattern and scheme to hinder, delay, or defraud Babieca in the collection of the debt owed by Cohen Anytime and Cohen, Defendants through the criminal enterprise have also used the judicial system to successfully evade production of any meaningful financial discovery, including filing multiple fraudulent bankruptcy filings to delay trial of the state court proceedings. For example, Cohen Anytime filed for bankruptcy on a Friday afternoon on the eve of trial which was set to begin the following Monday. Cohen Anytime's bankruptcy was dismissed on October 9, 20204 due to its failure to provide the required documents to the trustee and because the case had been filed in bad faith to delay the pending state court trial.  A copy of the October 9, 2024 Cohen Anytime bankruptcy order is attached as **Exhibit H**.  Cohen also personally filed for bankruptcy in March 2024 which was voluntarily dismissed on August 20, 2024. The bankruptcy court then imposed sanctions against Cohen for failure to show at his deposition and has prohibited him from re-filing for bankruptcy for 180 days or February 16, 2025[5]. A copy of the August 20, 2024 Cohen bankruptcy order is attached as **Exhibit I.**  Cohen has abused the bankruptcy system.

45.    Defendants' abuse of the judicial process (both in the state case and bankruptcy courts) is only part of their scam.  In addition, Cohen Anytime and Cohen with the assistance Tonic

---

[5] Hernandez appears to be going down a similar path as the trustee in his bankruptcy has filed several notices of deficiencies and recommendations and there is a pending motion to dismiss the bankruptcy for failure to comply with the trustees' notices. It is also believed Hernandez has fled the country in order to avoid any liability, as he failed to show at three scheduled depositions in the state court case and was set to appear at trial via zoom.

Investments and Hernandez have, upon information and belief, falsified records, creating fictitious invoices in an effort to hinder, delay or defraud Babieca.  In particular, Cohen Anytime produced the Purported Invoices (Invoice #1028 and Invoice #1029) totaling purported sales of $1,240,000 in watches,[6] but there are no entries in the General Ledger produced by Cohen Anytime acknowledging these amounts as "Accounts Receivable" nor are these amounts reflected in the Balance Sheet as of March 31, 2023.  *See* Exhibits E, F, and G (Initial Purported Financial Statements, Supplemental Purported Financial Statements, and Invoice #1028 and #1029).

46.     Moreover, based on its own independent investigation Babieca discovered and obtained another invoice from non-party Platinum Times, LLC ("**Platinum Times**") – Invoice #1034 dated February 16, 2023 (which predates Invoice #1029 above yet has a higher invoice number of "1034") – that was issued by Cohen Anytime in the amount of $1,000,000.00 for the recent (February 16, 2023) sale to Platinum Times of one of the same Richard Millie Jackie Chan watches listed in Invoice #1029 issued to Tonic Investments.  A copy of Invoice #1034 is attached as **Exhibit J**.

47.     Similarly, Invoice #1034 is also not recorded in the General Ledger or reflected in the Balance Sheet as an "Accounts Receivable."  There is also no record of payment for either Invoice #1034 or Invoice #1029 in any bank statements, nor does the cash balance reflect a sale thereof. *See* Exhibits E, F, G, and H (Initial Purported Financial Statements, Supplemental Purported Financial Statements, and Invoice #1028, #1029, and #1034).

48.     Cohen Anytime and Cohen did not disclose the existence of or produce Invoice #1034 in the state court proceeding; instead, they, with assistance of Hernandez and Tonic

---

[6] As noted, Invoice #1028 dated January 7, 2023 in the amount of $200,000 to Tonic Investments for the purported sale of a Audemars Piguet watch, and Invoice #1029 dated February 18, 2023 in the amount of $1,040,000 is for the purported sale of two Richard Mille watches.

Investments, knowingly produced fraudulent Purported Invoices, and in doing so Cohen Anytime and Cohen, with the assistance of Hernandez and Tonic Investments, have attempted to defraud Babieca of monies or assets owed by Cohen Anytime and Cohen as guarantor.

49.     Prior to signing the Settlement Documents, Cohen and Cohen Anytime never intended to pay Plaintiff the $7.5 million. This scam was all part of the RICO criminal enterprise engaged in by Defendants, and in order for this plan to work, Cohen and Cohen Anytime had to become "judgment proof" meaning that they would appear uncollectible on paper, because they had no money in their bank accounts, in the event that Plaintiff ever decided to sue to enforce the Settlement Documents. Therefore, immediately prior to executing the Settlement Documents, Cohen, individually and acting on  behalf of Cohen Anytime and Cohen Jewels, began hiding cash in real property by fraudulently transferring money to Builes, Cohen's girlfriend, and Pablo Puelvas" (who is believed to be an alias of "Paul Buelvas") ("**Puelvas**"), the recent ex-husband of Builes, for them to buy property from third parties and either hold the real property for the benefit of Cohen or transfer it to another entity that would be held for the benefit of Cohen.

50.     Plaintiff's investigation to date has revealed the following apparent fraudulent transactions believed to done as part of the RICO criminal enterprise engaged in by Defendants:

- On October 28, 2022, Cohen Anytime transferred $328,000.00 to Nova Title on behalf of Builes, Cohen's girlfriend, so she could purchase a house in Boca Raton, Florida.  There is no legitimate business reason for this transfer of money to Builes.

- On January 10, 2023, Cohen Anytime transferred $190,000.00 to Puelvas. There was no legitimate business purpose for this transfer of money to "Pablo Puelvas" a/k/a Paul Buelvas.

- On April 6, 2023, a company called "330 Sunny Isles FL LLC" purchased an Aventura condominium unit located at 330 Sunny Isles Blvd., unit 5-603 (the "Aventura Condo"), for $950,000.00. Edward J. McCormick, Esq. prepared the 330 Sunny Isles FL LLC affidavit stating that Paul Buelvas is the member of this Delaware LLC.

- On May 23, 2023, the company, 7345 SW 96th Street LLC sold real estate located at 7345 SW 96th St., Pinecrest, FL 33156 (the "Pinecrest Property"). The Pinecrest Property was sold to 7345 Pinecrest LLC, for $2,130,000.00 and the deed was returned to Edward J. McCormick, P.A. Joel Vigo was the managing member of 7345 Pinecrest LLC. On August 28, 2023, only three months later, 7345 Pinecrest LLC sold the Pinecrest Property to Juliana Builes for $2,139,100.00. The $9,000.00 difference in the sales price for the Pinecrest Property did not cover closing costs and doc stamp costs and there was no legitimate business purpose for this real property transaction. Upon information and belief, Builes owns the Pinecrest Property for the benefit of Cohen.

- On March 15, 2024, approximately 1 year after the purchase, 330 Sunny Isles FL LLC sells the Aventura Condo for the same purchase price, $950,000.00, to JV Sunny Isles LLC. Again, the warranty deed for the Aventura Condo transaction was prepared by Edward J. McCormick, P.A. Again, Joel Vigo is the managing member of JV Sunny Isles LLC and owns it for the benefit of Cohen.

14

51.     Upon information and belief, as part of the RICO criminal enterprise engaged in by Defendants, Cohen is using the Pinecrest Property and Aventura Condo to hold the proceeds of the sale of Plaintiff's watches for the purposes of thwarting and preventing Plaintiff from recovering on a future judgment against Cohen, Cohen Anytime and other conspirators.

52.     In addition, Defendants have continued to attempt to make themselves judgment proof by fraudulently closing companies, depleting bank accounts, transferring large sums of money to third parties, transferring real property to third parties or shell companies, and even fleeing the jurisdictions. All promises of collateral or collateral that Cohen Anytime has been ordered to produce seem to be worthless with no documentation of ownership or value.

53.     All conditions precedent to the commencement of this action have occurred, been excused, or have been waived.

54.     Babieca has obligated itself to pay the undersigned attorneys a reasonable fee for their legal services.

## COUNT I – BREACH OF PROMISSORY NOTE
### (Against Cohen Anytime)

55.     Babieca re-alleges the allegations of paragraphs 1 through 54, above.

56.     The Promissory Note in favor of Babieca given by Cohen Anytime is a valid and enforceable contract under Florida law.  *See* Promissory Note attached as Exhibit B.

57.     Cohen Anytime has defaulted and failed to make any payment to Babieca under the Promissory Note.

58.     In accordance with the terms of the Promissory Note, Babieca sent Cohen Anytime written notice of Cohen Anytime's default under the Promissory Note and has made formal demand for payment of all monies owed under the Promissory Agreement, plus interest.

15

59.     Cohen Anytime is in material breach of its obligations under the Promissory Note due to its non-payment of $7,500,000.00, plus interest, which was due and payable upon Babieca's demand after Cohen Anytime's default of the Promissory Note's terms.

60.     As a consequence of the foregoing, Babieca has suffered damages in the amount of $7,500,000.00, plus accrued interest, post-judgment interest, attorney's fees, and costs.

**WHEREFORE**, Babieca respectfully requests that this Court enter judgment in its favor and against Cohen Anytime for all damages suffered by Babieca, including interest, attorney's fees, and costs, and for any other remedies allowable by law or that the Court deems just and proper.

## COUNT II – BREACH OF GUARANTY
### (Against Cohen)

61.     Babieca re-alleges the allegations of paragraphs 1 through 54, above.

62.     Cohen willingly provided the Guaranty in favor and for the benefit of Babieca to secure the obligations of the Promissory Note, both of which are valid and enforceable contracts. *See* Promissory Note and Guaranty attached as Exhibits B and C respectively.

63.     Cohen Anytime defaulted and failed to make any payment to Babieca as required under the Promissory Note.

64.     In accordance with the terms of the Guaranty, Babieca sent Cohen Anytime written notice of Cohen Anytime's default under the Promissory Note and made a formal demand for payment of all monies owed under the Guaranty.

65.     Cohen has failed or refused to make any payment owed to Babieca under the Guaranty.

66.     Cohen is in material breach of his obligations under the Guaranty due to his non-payment of $7,500,000.00, plus interest, which was due and payable to Babieca upon Babieca's demand after default of the Promissory Note by Cohen Anytime.

16

67.     As a consequence of the foregoing, Babieca has suffered damages in the amount of $7,500,000.00, plus accrued interest, post-judgment interest, attorney's fees, and costs.

**WHEREFORE**, Babieca respectfully requests that this Court enter judgment in its favor and against Cohen for all damages suffered by Babieca, including interest, attorney's fees and costs, and for any other remedies allowable by law or that the Court deems just and proper.

### COUNT III – ENFORCEMENT OF SECURITY AGREEMENT
### (Against Cohen Anytime)

68.     Babieca re-alleges the allegations of paragraphs 1 through 54, above.

69.     Cohen Anytime entered into the Security Agreement in favor and for the benefit of Babieca, which is a valid and enforceable contract. *See* Security Agreement attached as Exhibit D.

70.     Cohen Anytime has defaulted and has failed to make any payment to Babieca as required under the Promissory Note.

71.     In accordance with the terms of the Security Agreement, Babieca sent Cohen Anytime written notice of Cohen Anytime's default under the Promissory Note and made a formal demand for payment of all monies owed under such document.

72.     Cohen Anytime never gave Plaintiff a valid security interest.

73.     Cohen Anytime has failed or refused to make any payment owed to Babieca under the Promissory Note.

74.     Cohen Anytime is in material breach of its obligations under the Security Agreement due to its non-payment of $7,500,000.00, plus interest, which was due and payable upon Babieca's demand after default of the Promissory Note payment terms.

75.     As a consequence of the foregoing, Babieca exercises its rights under the Security Agreement and demands relief under same for possession and seizure of all assets pledged by such agreement.

**WHEREFORE**, Babieca respectfully requests that this Court enter judgment in its favor and against Cohen Anytime for all damages suffered by Babieca, including pre and post judgment relief of seizing and taking possession and title of the secured collateral pledged by way of the Security Agreement, interest, attorney's fees and costs, and for any other remedies (monetary and/or equitable) allowable by law or that the Court deems just and proper.

## COUNT IV – REPLEVIN
### (Against All Defendants)

76.     Babieca re-alleges the allegations of paragraphs 1 through 54, above.

77.     The Security Agreement executed by Cohen Anytime provides Babieca a security interest in "collateral" as defined by the Security Agreement, including the inventory of watches purchased by Cohen Anytime pursuant to the Settlement Agreement (set forth in Exhibit 1 to the Settlement Agreement).  *See* Security Agreement attached as Exhibit D, ¶ 2(a).

78.     Paragraph 10 of the Security Agreement additionally provides, *inter alia*, that upon a default by Cohen Anytime, Babieca (the secured party) is entitled to immediate possession of the collateral as defined by the Security Agreement.  *See* Security Agreement, ¶ 10.

79.     Babieca believes that some or all of the collateral, including watches purchased by Cohen Anytime pursuant to the Settlement Agreement, is currently in the possession of Cohen Anytime, Cohen or the other named Defendants or related parties to Defendants.

80.     Babieca hereby demands that possession of the collateral, including any watches purchased by Cohen Anytime pursuant to the Settlement Agreement and all other jewelry and other inventory secured by the Security Agreement, be delivered to Babieca.

81.     The collateral and watches purchased pursuant to the Settlement Agreements have been intentionally and wrongfully detained by Cohen Anytime, Cohen or the other named Defendants or related parties to Defendants.

82.     Upon information and belief, Cohen Anytime, Cohen and the other named Defendants have failed and refuse to make available or return the collateral and watches purchased pursuant to the Settlement Agreement to Babieca in order to avoid Babieca taking possession and liquidation of it by Babieca to satisfy Cohen Anytime's obligations under the Settlement Agreement.

83.     Babieca is entitled to immediate possession of the collateral, including any watches purchased by Cohen Anytime pursuant to the Settlement Agreement and all other jewelry and other inventory secured by the Security Agreement.

**WHEREFORE**, Babieca requests that this Court enter judgment in its favor and against Defendants finding that Babieca is entitled to immediate possession of the collateral under the Security Agreement, including the watches purchased by Cohen Anytime pursuant to the Settlement Agreement and all other jewelry and other inventory secured by the Security Agreement, and for all damages suffered by Babieca, including interest, attorney's fees and costs, and for any other remedies (monetary and/or equitable) allowable by law or that the Court deems just and proper.

## COUNT V – CONVERSION
### (Against Cohen Anytime)

84.     Babieca re-alleges the allegations of paragraphs 1 through 54, above.

85.     Babieca has an indisputable security interest in the collateral listed in Paragraph 2(a) of the Security Agreement, including any watches purchased by Cohen Anytime pursuant to the Settlement Agreement and all other jewelry and other inventory secured by the Security Agreement, and has a present right of possession of that collateral.

86.     Cohen Anytime, without Babieca's consent or authorization, has knowingly sold, transferred, or concealed the whereabouts of the collateral, including any watches purchased by

Cohen Anytime pursuant to the Settlement Agreement, and has refused or failed to provide it to Cohen Anytime, despite the demand of Babieca and its obligation to do so under the Security Agreement.

87.     Cohen Anytime, by its actions, further knowingly misappropriated and converted the proceeds (monies) from the sale or transfer of the collateral for its own use without the consent of Babieca.

88.     By selling, transferring, or concealing the whereabouts of the collateral, and by misappropriating and converting any proceeds (monies) from the sale or transfer of the collateral, Cohen Anytime has unlawfully converted the collateral for his own use and exercised exclusive dominion and control over the collateral with the intent to deprive Babieca of the collateral.

89.     As a direct and proximate cause of the aforementioned conversion of the collateral (save for those returned), Babieca has been damaged.

**WHEREFORE**, Babieca respectfully requests that this Court enter judgment in its favor and against Cohen Anytime for all damages suffered by Babieca, including interest, attorney's fees and costs, and for any other remedies (monetary and/or equitable) allowable by law or that the Court deems just and proper.

**COUNT VI – AIDING AND ABETTING CONVERSION**
**(Against Cohen, Cohen Jewels, Izhak,**
**Tonic Investments, Katherine, and Builes)**

90.     Babieca re-alleges the allegations of paragraphs 1 through 54, above.

91.     Babieca has an indisputable security interest in the collateral listed in Paragraph 2(a) of the Security Agreement, including any watches purchased by Cohen Anytime pursuant to the Settlement Agreement and all other jewelry and other inventory secured by the Security Agreement, and has a present right of possession of that collateral.

92.     Cohen, Cohen Jewels, Izhak, Tonic Investments, Katherine, and Builes aided and abetted Cohen Anytime in the conversion of the collateral secured under the Security Agreement, including any watches purchased by Cohen Anytime pursuant to the Settlement Agreement and all other jewelry and other inventory secured by the Security Agreement, by facilitating the transfer and sale of the collateral despite knowledge of Babieca security interest in the collateral.

93.     As a direct and proximate result of Cohen, Cohen Jewels, Izhak, Tonic Investments, Katherine, and Builes' participation in the scheme to defraud Babieca, including fraudulently converting, thieving, concealing, and transferring the collateral (monies and assets) that were secured by the Security Agreement, Plaintiff has suffered damage (save for those returned).

**WHEREFORE**, Babieca respectfully requests that this Court enter judgment in its favor and against Cohen, Cohen Jewels, Izhak, Tonic Investments, Katherine, and Builes for all damages suffered by Babieca, including interest, attorney's fees and costs, and for any other remedies (monetary and/or equitable) allowable by law or that the Court deems just and proper.

## COUNT VII –FRAUDULENT TRANSFERS (FLA. STAT. §§ 726.101, *ET. SEQ.*)
### (Against All Defendants)

94.     Babieca re-alleges the allegations of paragraphs 1 through 54, above.

95.     All conditions precedent to the filing of this count under Florida's Uniform Fraudulent Transfer Act (Fla. Stat. §§ 726.101, *et. seq.*) ("**FUFTA**") have been satisfied.

96.     Based upon a review of Cohen Anytime's Initial Purported Financial Statements, Supplemental Purported Financial Statements and the Purported Invoices and Invoice #1034, as well as the other transfers described above (*see* ¶¶ 50-51, above), Plaintiff has identified a number of unlawful transactions and disbursements to related parties or parties that otherwise have no legitimate business dealings with Cohen Anytime, including Cohen, Izhak, Cohen Jewels, Tonic Investments, Katherine, and Builes.

97.    Babieca is a creditor of Defendants since it has claims stated in this action for damages and return of fraudulently obtained funds.

98.    The funds obtained from Cohen Anytime by Defendants - with the facilitation and participation of Cohen and others - were transferred in the following manner, thereby carrying badges of fraud:

- The transfers were made to corporate insiders or related parties, or bank accounts owned and controlled by Defendants;

- Cohen Anytime has become essentially insolvent due to the account depletion;

- The transfers were for no legitimate business purpose; and

- The transfer of funds was intentionally and wrongfully concealed.

99.    Defendants are each individual transferees of fraudulently transferred funds and each is therefore individually liable under FUFTA and is a proper party to this claim.

100.    For the foregoing reasons, the transfers were made fraudulently as defined and provided for in FUFTA.

**WHEREFORE**, Babieca respectfully requests that this Court enter judgment in its favor and against Defendants for all damages suffered by Babieca, including interest, attorney's fees and costs, and for any other remedies (monetary and/or equitable) allowable by law or that the Court deems just and proper, including:

(1) Concluding that badges of fraud have been sufficiently shown to deem the transfers fraudulent under the law;

(2) Reversing the burden of proof and requiring Defendants to justify all transfers as per law;

(3) Granting avoidance of the transfers to the extent necessary to satisfy Babieca's claims against Defendants;

(4) Granting an attachment or other provisional remedy against the discovered assets transferred or other property of the transferee;

(5) Granting an injunction against further disposition by Defendants, or transferees, or both, of the discovered assets transferred or of other property;

(6) Allowing Babieca to levy execution on the asset transferred;

(7) Awarding Babieca reasonable attorney's fees and costs incurred in satisfying its claim; and

(8) Awarding Babieca any such other and further relief as the court deems just and proper.

**COUNT VIII – CIVIL THEFT PURSUANT TO FLA. STAT. §812.014**
**(Against Cohen Anytime, and Cohen)**

101.    Babieca re-alleges the allegations of paragraphs 1 through 54, above.

102.    Cohen Anytime is guilty of theft pursuant to Fla. Stat. §812.014.  In particular, and as stated in Exhibit K, Cohen Anytime knowingly (1) sold, transferred, or concealed the whereabouts of the collateral at issue, including any watches purchased by Cohen Anytime pursuant to the Settlement Agreement, (2) facilitated the transfer, sale or concealment of the collateral, or (3) misappropriated the proceeds (monies) from the sale or transfer of the collateral, with the intent to permanently deprive Babieca of the right and benefit to such collateral or monies for their own use.

103.    Cohen Anytime acted with felonious intent.

104.    Babieca is entitled to a claim under Fla. Stat. §772.11 (Civil remedy for theft or exploitation) and is entitled to treble damages.

105.    Pursuant to Fla. Stat. §772.11, Plaintiff has made written demand on Cohen Anytime (a copy of the letter is attached as **Exhibit K**), and Cohen Anytime has failed to pay treble damages.

106.    As a direct and proximate result of Cohen Anytime's actions as set forth above, Babieca has been damaged.

**WHEREFORE**, Babieca respectfully requests that this Court enter judgment in its favor and against Cohen Anytime for treble damages, interest, attorney's fees and costs, and for any other remedies (monetary and/or equitable) allowable by law or that the Court deems just and proper.

**COUNT IX – FRAUDULENT INDUCEMENT**
**(Against Cohen Anytime, and Cohen)**

107.    Babieca re-alleges the allegations of paragraphs 1 through 54 above.

108.    As noted, the owners of Time and Tonic, 95 Investments and Hernandez, entered into a Settlement Agreement to resolve a managerial and member deadlock in the Company and to settle all disputes and disagreements between the owners with respect to Time and Tonic.

109.    As part of (and included in) the Settlement Agreement: (1) Cohen Anytime agreed to purchase Time and Tonic's full inventory of watches for $7,500,000.00 as set forth in the T&T Invoice, (2) Time and Tonic and Babieca executed the Assignment whereby Time and Tonic assigned the T&T Invoice to Babieca, (3) Cohen Anytime executed the Promissory Note in favor of Babieca (which was acknowledged and accepted by Babieca), (4) Cohen – as 100% owner of Cohen Anytime – executed a Guaranty in favor and for the benefit of Babieca, and (5) Cohen Anytime and Babieca executed the Security Agreement in favor of Babieca granting Babieca a security interest in the collateral to secure the payment and performance in full of a Promissory Note for $7,500,000 executed by Cohen Anytime.

110.    Cohen Anytime and Cohen knew or should have known, or were reckless in failing to know that Cohen Anytime did not have the funds available to pay Babieca for the inventory of watches at the agreed price of $7,500,000.00 and that Cohen Anytime never in fact intended to

pay Babieca the inventory of watches it purchased (but instead intended to defraud Babieca as set forth above) before Babieca agreed to terms outlined in the Settlement Documents including execution of the Assignment and Security Agreement; or Cohen Anytime and Cohen engaged in conduct and practices or made omissions or representations to Babieca concerning the purchase of the inventory of watches and the existence and availability of funds to pay for the watches without knowledge of their truth or falsity.

111.    Despite this actual or constructive knowledge, Cohen Anytime and Cohen knowingly engaged in conduct or practices or made misrepresentations, omissions, and/or misstatements of material fact with the intent to induce Babieca to agree to terms outlined in the Settlement Documents and execution of the Assignment and Security Agreement, including but not limited to failing to disclose that Cohen Anytime did not have the funds available to pay Babieca for the inventory of watches a and that Cohen Anytime never in fact intended to pay Babieca for the inventory of watches it purchased.

112.    Babieca justifiably relied on the conduct, misrepresentations, omissions, and/or misstatements of material fact made by Cohen Anytime and Cohen to its own detriment and was induced to agree to terms outlined in the Settlement Documents including execution of the Assignment and Security Agreement.

113.    Babieca would never have entered agreed to the terms of the Settlement Documents or executed the Assignment and Security Agreements if Cohen Anytime and Cohen disclosed that Cohen Anytime did not have the funds available to pay Babieca for the inventory of watches and that Cohen Anytime never in fact intended to pay Babieca for the inventory of watches it purchased.

114.     As a direct and proximate result of Cohen Anytime and Cohen's' conduct, misrepresentations, omissions, and/or misstatements of material fact, Babieca has incurred damages.

**WHEREFORE**, Babieca respectfully requests that this Court enter judgment in its favor and against Cohen Anytime and Cohen for all damages suffered by Babieca, including interest, attorney's fees and costs, and for any other remedies (monetary and/or equitable) allowable by law or that the Court deems just and proper.

## COUNT X – CIVIL CONSPIRACY
### (Against All Defendants)

115.     Babieca re-alleges the allegations of paragraphs 1 through 54, above.

116.     Upon information and belief, Defendants entered into an agreement and conspired among themselves to commit illegal acts and to use illegal methods, including but not limited to engaging in fraudulent acts, conduct, and misrepresentations, as described above.

117.     In particular, as described above, Defendants engaged in multiple overt acts, conduct, and misrepresentations in furtherance of this conspiracy, including, but not limited to: (1) engaging in acts of fraud against Babieca; (2) selling, transferring, or concealing the whereabouts of the collateral, including any watches purchased by Cohen Anytime pursuant to the Settlement Agreement, (3) facilitating the transfer, sale or concealment of the collateral, and (4) misappropriating and converting any proceeds (monies) from the sale or transfer of the collateral.

118.     As a direct and proximate result of Defendants' acts performed pursuant to the conspiracy, Babieca has incurred damages.

**WHEREFORE**, Babieca respectfully requests that this Court enter judgment in his favor and against Defendants for all damages suffered by Babieca, including interest, attorney's fees and

costs, and for any other remedies (monetary and/or equitable) allowable by law or that the Court deems just and proper.

### COUNT XI – VIOLATION OF RICO, 18 U.S.C § 1962(c)

119.    Babieca re-alleges the allegations of paragraphs 1 through 54, above.

120.    18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).

121.    Each Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding "a legal or beneficial interest in property."

122.    An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

123.    A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity" 18 U.S.C. § 1961(5).

124.    Defendants formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4), and knowingly, willfully and unlawfully conducted and participated in that enterprise's affairs through a pattern of racketeering activity consisting of numerous and repeated acts of interstate mail and wire fraud and money laundering to execute a scheme to defraud Plaintiff of $7,500,000.00 of luxury watches in violation of 18 U.S.C. § 1962(c).

125.     Defendants used interstate mail, wire and email communications and laundered money to create and execute a scheme to defraud Plaintiff of $7,500,000.00 in luxury watches.

126.     As described herein Defendants knowingly, willfully and unlawfully committed or aided and abetted the commission of at least two acts of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. § 1341 (relating to mail fraud), 18 USCS § 1343 (relating to wire fraud), and/or 18 U.S.C. § 1956 (relating to the laundering of monetary instruments) within the past 10 years.

127.     The multiple acts of racketeering activity that Defendants committed and/or conspired to, or aided and abetted in the commission of, were not isolated, but rather were related to each other.  Further, the acts of racketeering by Defendants have been continuous since prior to the execution of the Settlement Documents.

128.     As a direct and proximate consequence of the Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $7,5000,000.00.

129.     Because of Defendants' violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus costs and attorney's fees.

**WHEREFORE**, Babieca respectfully request that this Court enter judgment in its favor and against Defendants for treble damages, costs and attorneys' fees, interest, and for such other relief as the Court deems just and proper.

### COUNT XII – CONSPIRACY TO VIOLATE RICO, 18 U.S.C § 1962(d)
**(Against All Defendants)**

130.     Babieca re-alleges the allegations of paragraphs 1 through 54, above.

131.     18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

132.     Each Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3).

133.     In violation of 18 U.S.C. § 1962(d), Defendants have conspired to violate 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the enterprise through a pattern of racketeering activity, including among other things using interstate mail, wire and email communications and laundering money to create and execute a scheme to defraud Plaintiff of $7,500,000.00 in luxury watches.

134.     Defendants knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise described herein through a pattern of racketeering activity (interstate mail and wire fraud and money laundering).

135.     Defendants knew that their actions were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme.

136.     Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(c) in violation of 18 U.S.C. § 1962(d).

137.     As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $7,5000,000.00.

138.     Because of Defendants' violations of 18 U.S.C. § 1962(d), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus costs and attorney's fees.

**WHEREFORE**, Babieca respectfully requests that this Court enter judgment in its favor and against Defendants for treble damages, costs and attorneys' fees, interest, and for such other relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues triable before a jury.

Dated: November 12, 2024

Respectfully submitted,

**OSORIO INTERNACIONAL, P.A.**
175 S.W. 7th Street, Suite 1800
Miami, FL 33130
Telephone: 305.900.4103

/s/ *Carlos F. Osorio*
Carlos F. Osorio, Esq., B.C.S.
Florida Bar No.: 597546
E-mail:  cosorio@osorioint.com
Andrés F. Rey, Esq.
Florida Bar No.: 118875
E-mail:  arey@osorioint.com

*Counsel for Plaintiff BABIECA CAPITAL, LP*