## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

BABIECA CAPITAL, LP,

      Plaintiff,

v.

COHEN ANYTIME, INC., et al.,

      Defendants.

Case No.: 1:24-cv-24460-PCH

## <u>ORDER</u>

**THIS CAUSE** is before the Court on Defendants', Tonic Investments, LLC ("Tonic Investments"), Cohen Anytime, Inc. ("Cohen Anytime"), Cohen Jewels Inc. ("Cohen Jewels"), Juliana Builes ("Builes"), and Mordechai Cohen ("Cohen"), Motions to Dismiss [ECF Nos. 31, 33, 76, 90] (collectively, the "Motions"). Having reviewed the Motions, all opposing and supporting submissions, the record, and being otherwise fully advised in the premises, the Motions are **GRANTED IN PART AND DENIED IN PART** as follows: (1) the Court has jurisdiction over this action; (2) Florida's litigation privilege is inapplicable, such that dismissal is not warranted; and (3) some, but not all, of the claims at issue are dismissed with leave to amend.

## I.    BACKGROUND

This case arises from an allegedly unlawful scheme by Tonic Investments, Cohen Anytime, Cohen Jewels, Builes, Cohen, and others to defraud Plaintiff, Babieca Capital, LP ("Plaintiff"), out of millions of dollars. *See generally* Complaint [ECF No. 1] ("Compl."). According to Plaintiff, in November 2022, Time and Tonic Holdings LLC's ("T&T") two owners, neither of whom are

parties in the instant action, entered into a settlement agreement.[1] *Id.* ¶¶ 23–24. As part of this settlement agreement, and to satisfy a prior debt owed by T&T to Plaintiff, Plaintiff, T&T, and Cohen Anytime entered into a three-way agreement, whereby T&T sold its high-end, luxury watch inventory for $7.5 million to Cohen Anytime, and Cohen Anytime assigned a security interest in the watches to Plaintiff. *Id.* ¶¶ 25–27. To facilitate this three-way agreement, Cohen Anytime executed a promissory note in favor of Plaintiff, and Cohen, as the owner of Cohen Anytime, executed a guaranty in favor of Plaintiff. *Id.* ¶ 29. Cohen Anytime also executed a security agreement in favor of Plaintiff, granting Plaintiff a security interest in Cohen Anytime's "collateral," as defined by the security agreement, to secure full payment of the promissory note.[2] *Id.* ¶ 31. Neither Cohen Anytime nor Cohen paid Plaintiff. *Id.* ¶¶ 32–35. Thus, in February 2023, Plaintiff filed suit in Florida state court (the "State Court Action").[3] *Id.* ¶ 36.

In the State Court Action, Plaintiff obtained financial statements from Cohen Anytime that it believes reveal a concerted, unlawful effort by Defendants in the instant action to defraud Plaintiff out of millions of dollars. *Id.* ¶¶ 37–43. For example, Plaintiff alleges that not only do the financial statements allegedly fail to account for the $7.5 million worth of watches, but also show "a number of apparent unjustified transactions or disbursements to related parties or parties that otherwise have no legitimate business dealings with Cohen Anytime," including Cohen, Cohen Jewels, Tonic Investments, and Builes, among others. *Id.* ¶¶ 41–43. The financial statements also

---

[1] Plaintiff alleges that the owners entered into a settlement agreement "in order to resolve a managerial and member deadlock in the Company and to settle all disputes and disagreements with respect to Time and Tonic." *Id.* ¶ 24.

[2] Collectively, these documents are referred to as the "Settlement Documents." *Id.* ¶ 31 n.2.

[3] As of the date of this Order, Plaintiff has voluntarily dismissed all defendants in the State Court Action. *See Babieca Capital, LP v. Mordechai Cohen et al.*, Case No. 2023-002294-CA-01 (Fla. 11th Cir. Ct. 2023).

allegedly include falsified invoices created by Cohen Anytime, Cohen, and Tonic Investments. *Id.* ¶ 45–48. Moreover, according to Plaintiff, Cohen, individually and through Cohen Anytime and Cohen Jewels, "began hiding cash in real property by fraudulently transferring money" to other individuals, including Builes, so that they could purchase real property in South Florida ultimately held for the benefit of Cohen. *Id.* ¶¶ 49–50. Plaintiff believes that Cohen is using some of these properties to "hold the proceeds" of the sale of the watches. *Id.* ¶ 51.

In November 2024, Plaintiff filed the instant Complaint against Defendants alleging: (I) breach of promissory note (against Cohen Anytime); (II) breach of guaranty (against Cohen); (III) enforcement of security agreement (against Cohen Anytime); (IV) replevin (against all Defendants); (V) conversion (against Cohen Anytime); (VI) aiding and abetting conversion (against Cohen, Cohen Jewels, Tonic Investments, Builes, Katherine Cohen, and Izhak Cohen); (VII) fraudulent transfers (against all Defendants); (VIII) civil theft (against Cohen Anytime and Cohen); (IX) fraudulent inducement (against Cohen Anytime and Cohen); (X) civil conspiracy (against all Defendants); (XI) violation of RICO (without specific reference to any Defendant); and (XII) conspiracy to violate RICO (against all Defendants). *See generally* Compl. Defendants Tonic Investments, Cohen Anytime, Cohen Jewels, Builes, and Cohen have moved to dismiss the Complaint on jurisdictional and substantive grounds.[4] *See generally* [ECF Nos. 31, 33, 76, 90]. The Court addresses each Defendant's arguments below.

## II.   LEGAL STANDARDS

Federal courts are courts of limited jurisdiction. *See Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020). The Court must first evaluate its basis for jurisdiction before turning to the merits

---

[4] The Court notes that, as of the date of this Order, Defendant Katherine Cohen has filed a motion to dismiss [ECF No. 130] that is not yet fully briefed by the parties and, therefore, is not ripe for the Court's consideration, and Defendant Izhak Cohen has yet to be served.

of the case. *See id.* A district court has subject matter jurisdiction when the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), where the jurisdictional attack is based on the face of the pleadings, the court must determine whether the plaintiff sufficiently alleged a basis for subject matter jurisdiction, accepting the allegations in the complaint as true. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). By contrast, where the jurisdictional attack challenges the factual basis for jurisdiction (notwithstanding the allegations in the complaint), the court is free to consider materials outside the pleadings, and the pleadings are not afforded a presumption of truth. *See id.*

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient facts, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this standard "does not require 'detailed factual allegations,'… it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Instead, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

In addition, claims rooted in fraud must satisfy a heightened pleading standard under Federal Rule of Civil Procedure Rule 9(b). *See Yuanxiao Feng v. Walsh*, No. 19-24138-CIV, 2020

WL 5822420, at *15 (S.D. Fla. Sept. 14, 2020), *report and recommendation adopted*, 2020 WL 5819615 (S.D. Fla. Sept. 30, 2020). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotations and citation omitted). "[U]nder Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).

## III.   DISCUSSION

### A. Jurisdiction

Defendants argue that this Court lacks jurisdiction, or alternatively should abstain from exercising jurisdiction over this action, because Plaintiff improperly removed this action from Florida state court and comes over a year after Plaintiff initiated a parallel, and still unresolved, State Court Action. *See* Mot. [ECF No. 31] at 8–12; Mot. [ECF No. 33] at 22–26; Mot. [ECF No. 76] at 4–7; Mot. [ECF No. 90] at 18. As an initial matter, Defendants do not cite any applicable caselaw supporting their argument that Plaintiff's filing of the instant Complaint is a de facto removal from state court. Accordingly, the Court finds that this is not a basis for dismissal.

Turning to abstention, as of the date of this Order, although the State Court Action remains an open civil case on the state court docket, Plaintiff has voluntarily dismissed all defendants in the case. *See Babieca Capital, LP v. Mordechai Cohen et al.*, Case No. 2023-002294-CA-01 (Fla. 11th Cir. Ct. 2023).[5] Accordingly, the Court need not abstain from exercising jurisdiction over this case because, although the State Court Action remains open on the state court docket, it is nonetheless not ongoing because there are no defendants remaining in the case. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 444 n.11 (1985) (noting that plaintiff voluntarily dismissed a pendent state claim after the federal court "indicated that its presence might make abstention appropriate"). To be sure, Defendants do not challenge the existence of diversity jurisdiction, and a review of the Complaint confirms that the parties are diverse and that the amount in controversy exceeds $75,000. *See* Compl. ¶¶ 9–18.

Accordingly, the Court has jurisdiction over this action.

**B. Litigation Privilege**

Defendants Tonic Investments, Cohen Anytime, Cohen Jewels, and Cohen assert that the "litigation privilege" shields them from liability for (1) any evidence of wrongdoing uncovered through discovery in the State Court Action and (2) any alleged "abuse of the judicial system" through filing for bankruptcy while the State Court Action was pending. *See* Mot. [ECF No. 90] at 16–18; Reply [ECF No. 50] at 4–5; Reply [ECF No. 53] at 8–10. Defendants misinterpret the purpose and nature of this privilege.

---

[5] "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment[,]" and "[p]ublic records are among the permissible facts that a district court may consider." *Universal Express, Inc. v. SEC*, 177 Fed. App'x 52, 53 (11th Cir. 2006).

"The litigation privilege 'provides absolute immunity to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior, so long as the act has some relation to the proceeding.'" *Sexton v. Carnival Corp.*, 504 F. Supp. 3d 1359, 1364 (S.D. Fla. 2020) (quoting *El Hassan v. Liberty Home Equity Solutions, Inc.*, 2018 WL 3134418, *2 (S.D. Fla. June 26, 2018)). The litigation privilege extends to parties, judges, witnesses, and counsel, and is most commonly applied to shield parties from civil torts like defamation or perjury. *See Fridovich v. Fridovich*, 598 So.2d 65, 66 (Fla. 1992). The litigation privilege does not, however, prevent plaintiffs from asserting new claims against defendants based upon facts uncovered during discovery because the litigation privilege only applies to acts taken during the course of litigation, not before. *See Sexton*, 504 F. Supp. 3d at 1365 (finding that the litigation privilege did not prevent a plaintiff from asserting a claim of tortious interference with a dead body, which she only learned of after the defendant disclosed photographs of the decedent, because "the fact that a new claim was uncovered during discovery does not immunize the wrongdoer from its pre-litigation misconduct").

Here, Defendants contend that they are immune from suit for anything that Plaintiff uncovered within Cohen Anytime's bank statements, ledgers, and invoices, which were obtained through discovery in the State Court Action. However, the litigation privilege does not shield parties from claims that existed before litigation commenced. *See Sexton*, 504 F. Supp. 3d at 1364–65. Indeed, "[t]he production of documents that ultimately underlie that claim might have revealed the existence of that claim, but it did not cause that claim to come into existence. Hence, that production is not protected by the litigation privilege." *Id*. at 1366. Cohen Anytime's financial documents obtained through discovery in the State Court Action existed prior to the

commencement of the action. As such, the litigation privilege is inapplicable to claims arising from those financial documents.[6]

Accordingly, the litigation privilege does not bar Plaintiff's claims.

**C. Replevin**

Defendant Cohen argues that the Complaint fails to state a claim for replevin because under sections 679.602(6) and 679.609, Florida Statutes, Plaintiff is prohibited from physically retrieving the collateral subject to the Security Agreement from Cohen Anytime without first obtaining judicial process because doing so would breach the peace and, therefore, Plaintiff does not have the right to immediate possession of the collateral. *See* Mot. [ECF No. 90] at 10–11. This argument is nonsensical because, by way of this action, Plaintiff is seeking the judicial process required to retrieve the collateral.[7] Indeed, "a writ of replevin may only issue against specific property as to which a claimant has a possessory right." *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1549 (S.D. Fla. 1996). "[A] right to possession for purposes of a replevin action" exists, for example, "where the parties' lease agreement gave the moving party the *express* right to possession upon default under the contract." *Id.* (emphasis in original) (citing *Prestige Rent-A-Car, Inc. v. Advantage Car Rental and Sales, Inc. (ACRS)*, 656 So. 2d 541, 545 (Fla. 5th DCA 1995)). Here, the Complaint alleges that "Paragraph 10 of the Security Agreement … provides … that upon a default by Cohen Anytime, Babieca (the secured party) is entitled to immediate possession of the

---

[6] Although the Complaint alleges that Defendants engaged in "abuse of the judicial process," *see, e.g.*, Compl. ¶ 45, those allegations do not warrant dismissal because the claims at issue are not solely based on purported litigation misconduct, but rather include separate allegations of wrongdoing that extend beyond and even before the existence of the State Court Action. *See, e.g.*, *id.* ¶ 49 (alleging that, prior to execution of the Settlement Documents, Cohen fraudulently transferred money to avoid paying Plaintiff).

[7] The statutes Cohen relies on are irrelevant because they establish how a party may take possession of collateral after a default, not how a party obtains a possessory interest in the collateral.

collateral as defined by the Security Agreement." Compl. ¶ 78; *see also* [ECF No. 1-5] at 4 (Security Agreement ¶ 10). At this stage, this is sufficient to establish Plaintiff's right to possession for purposes of its replevin claim against Cohen.

Turning to Builes, she contends that Plaintiff's replevin claim fails because it seeks the return of "undifferentiated money," does not allege how Builes came into possession of the collateral nor the cause of the detention, and does not comply with Florida Statute section 78.068(3) given that Plaintiff has failed to post a bond as a condition precedent to filing suit. *See* Mot. [ECF No. 76] at 7–8. "[R]eplevin is a possessory statutory action at law in which the main issue is the right to immediate possession and the gist of the action is the wrongful detention of the property[.]" *Wright v. Santander Consumer USA, Inc.*, No. 6:18-cv-263-Orl-22KRS, 2018 WL 2095171, at *6 (M.D. Fla. May 1, 2018) (quoting *Ethiopian Zion Coptic Church v. City of Miami Beach*, 376 So. 2d 925, 926 (Fla. 3d DCA 1979)). Florida Statute section 78.055 sets forth the requirements of a replevin claim, which include "[a] description of the claimed property that is sufficient to make possible its identification and a statement, to the best knowledge, information, and belief of the plaintiff of the value of such property and its location[,]" and "[a] statement that the property is wrongfully detained by the defendant, the means by which the defendant came into possession thereof, and the cause of such detention[.]" Fla. Stat. §§ 78.055(1), (3).

Importantly, as to Plaintiff's replevin claim against Builes, "the action of replevin is inappropriate and unavailable when the personalty converted is, as a practical matter, incapable of being specifically described in a writ of replevin and located, identified, and seized by the sheriff executing the writ." *Williams Mgmt. Enters., Inc. v. Buonauro*, 489 So. 2d 160, 163 (Fla. 5th DCA 1986). "Personalty can be incapable of identification and seizure either (1) because it is fungible property commingled with property of like kind, or (2) because it is intangible personal property."

9

*Id.* As such, "the remedy of replevin is not appropriate" where the complaint references "the intangible concept of wealth—of money due and owing or debt[.]" *Id.* at 164. In this regard, Builes is correct. Plaintiff fails to allege that Builes came into possession of specifically identified tangible personal property. According to the Complaint, Builes received fraudulent transfers of money and assets, without further description. *See* Compl. ¶¶ 16, 42, 49, 50. But money, generally, is intangible property not subject to a replevin action. *See Buonauro*, 489 So. 2d at 164 ("[N]ormally money is fungible property … which, if commingled with other similar money, is incapable of specific identification and not the proper subject of replevin."). Moreover, the reference to "assets" is insufficient because it falls short of meeting Florida Statute section 78.055(1)'s requirement that Plaintiff provide a "description of the claimed property that is sufficient to make possible its *identification*." (emphasis added).[8] Accordingly, the Complaint fails to state a claim for replevin as to Builes.

However, Builes is incorrect as to the sufficiency of the Complaint's allegations regarding how and why she came into possession of Plaintiff's property and whether Plaintiff was required to post a bond. First, the Complaint sufficiently alleges the means by which Builes came into possession of the property and the cause of such detention. *See* Compl. ¶¶ 16, 42, 49, 50 (alleging that Cohen and Cohen Anytime fraudulently transferred money and assets to Builes so that she could purchase real property and hold the property for Cohen's benefit). Second, Plaintiff was not required to post a bond because Plaintiff is not seeking a pre-judgment writ of replevin. *See* Compl. at 19 (wherefore clause requesting "that this Court enter judgment in its favor and against

---

[8] What may be sufficient is identifying the specific watches at issue by, for example, incorporating into the Complaint the invoice or inventory log detailing the specifications of such watches.

Defendants finding that Babieca is entitled to immediate possession of the collateral under the Security Agreement"); Fla. Stat. § 78.068 (titled "Prejudgment writ of replevin").

Nonetheless, as noted above, the Complaint fails to state a claim for replevin against Builes.

### D. Aiding and Abetting Conversion

Defendant Cohen argues that the Complaint fails to state a claim for aiding and abetting conversion because the claim is rooted in an alleged contractual breach, and the Complaint does not contain any allegations that go beyond the breach. *See* Mot. [ECF No. 90] at 8–10. Under Florida law, "a claim for conversion is actionable notwithstanding the existence of a contract, but it must go beyond and be independent from a failure to comply with the terms of the contract." *LBS Petroleum, LLC v. Demir*, No. 15-cv-22880, 2015 WL 12469064, at *11 (S.D. Fla. Oct. 28, 2015). Here, the Complaint alleges that:

> Cohen, individually and acting on behalf of Cohen Anytime and Cohen Jewels, began hiding cash in real property by fraudulently transferring money to Builes, Cohen's girlfriend, and Pablo Puelvas[,] … the recent ex-husband of Builes, for them to buy property from third parties and either hold the real property for the benefit of Cohen or transfer it to another entity that would be held for the benefit of Cohen. Compl. ¶ 49.

This allegation goes beyond, and is independent from, a mere breach of contract, and, therefore, Defendant Cohen's argument fails.[9]

Similarly, Defendants Tonic Investments, Cohen Jewels, and Builes contend that the Complaint fails to state a claim for aiding and abetting conversion because it does not allege that Tonic Investments, Cohen Jewels, and Builes had knowledge of the underlying violation or that Cohen Jewels and Builes rendered substantial assistance in committing the wrongdoing. *See* Mot.

---

[9] Defendant Cohen asserts the same argument as to Plaintiff's civil theft claim, *see* Mot. [ECF No. 90] at 8–10, but it is equally without merit. *See QSR Southern Grp., LLC v. A&A Rest. Holdings, LLC*, No. 2:19cv781-FtM-TPB-MRM, 2020 WL 1812286, at *2 (M.D. Fla. Apr. 9, 2020) ("Plaintiffs may bring claims for both civil theft and breach of contract, as long as the civil-theft claims go beyond failure to comply with a contract." (internal quotations and citation omitted)).

[ECF No. 31] at 12–13; Mot. [ECF No. 33] at 27–28; Mot. [ECF No. 76] at 8–9. To state a claim for aiding and abetting conversion, a plaintiff must allege: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x. 904, 906 (11th Cir. 2012) (applying Florida law). "[A]ctual knowledge of another's wrongful conduct is nearly universally found based upon circumstantial evidence." *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV, 2016 WL 8739579, at *4 (S.D. Fla. Oct. 25, 2016).

Here, Plaintiff states a viable claim against Tonic Investments, Cohen Jewels, and Builes for aiding and abetting conversion. Beginning with Tonic Investments, Plaintiff alleges that, to help Cohen Anytime defraud Plaintiff, Tonic Investments knowingly assisted Cohen Anytime in producing fraudulent invoices, dated January and February 2023, and received money from Cohen Anytime as a part of a criminal enterprise to hinder, delay, or defraud Plaintiff in collecting the debt owed. *See* Compl. ¶¶ 39, 42, 45–46, 48. As for Cohen Jewels and Builes, Plaintiff alleges that, between October 2022 and March 2024, Cohen Jewels and Builes likewise received money from Cohen Anytime as a part of a criminal enterprise to hinder, delay, or defraud Plaintiff in collecting the debt owed and that Defendant Cohen, through Cohen Anytime and Cohen Jewels, "began hiding cash in real property by fraudulently transferring money" to others, including Builes, "for them to buy property from third parties and either hold the real property for the benefit of [Defendant] Cohen or transfer it to another entity that would be held for the benefit of [Defendant] Cohen." *Id.* ¶¶ 42, 49. Viewed in the light most favorable to Plaintiff, the Complaint establishes that Tonic Investments, Cohen Jewels, and Builes had knowledge that Cohen Anytime wrongfully deprived Plaintiff of money and substantially assisted Cohen Anytime conceal its wrongdoings. At

this stage, these allegations are sufficient. *See Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIC, 2016 WL 8739579, at *4 (S.D. Fla. Oct. 25, 2016) (finding allegations that defendants prepared and transmitted fraudulent financial reports used by other defendants to create false investor reports were sufficient to state a claim for aiding and abetting conversion).[10]

Accordingly, Plaintiff states a viable claim for aiding and abetting conversion.

### E. Fraudulent Transfer

Defendants Tonic Investments, Cohen Jewels, Builes, and Cohen argue that the Complaint fails to state a claim for fraudulent transfer because it sets forth only bare legal conclusions. *See* Mot. [ECF No. 31] at 13–14; Mot. [ECF No. 33] at 28–29; Mot. [ECF No. 76] at 9–10; Mot. [ECF No. 90] at 11–12. Florida's Uniform Fraudulent Transfer Act is codified at Section 726.101, *et seq.*, Florida Statutes and specifically sets forth the circumstances in which "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred[.]" Fla. Stat. § 726.105(1). To state a claim for fraudulent transfer under Florida law, a plaintiff must allege that "(1) there was a creditor to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property which could have been applicable to the payment of the debt due." *SunGard Pub. Sector, Inc. v. Innoprise Software, Inc.*, No. 6:10–cv–1815–Orl–28GJK, 2012 WL 360170, at *6 (M.D. Fla. Feb. 2, 2012) (internal quotations omitted). Because a claim for fraudulent transfer is asserted against a person who, or entity that, did not deal directly with the plaintiff, the plaintiff possesses little or no information about the alleged fraudulent transfer other than that it occurred. *Onemata Corp. v. Rahman*, 20-CV-62002, 2024 WL 4068653, at *9 (S.D. Fla. Aug. 28, 2024), *report and*

---

[10] Defendants do not argue that Rule 9(b)'s heightened pleading standard applies to the aiding and abetting conversion claim, but even if it does, the Court finds that the foregoing allegations satisfy the Rule's "who, what, when, where, and how" requirements. *See Mizzaro*, 544 F.3d at 1237.

*recommendation adopted*, 2024 WL 4056794 (S.D. Fla. Sept. 5, 2024). "Given a plaintiff's lack of access to information in a fraudulent transfer case, application of a heightened pleading standard is inappropriate." *Id.* Moreover, Florida courts have held that a complaint tracking the language of the statute is sufficient to state a claim for fraudulent transfer. *See Wurtzebach v. Flooring Depot FTL, Inc.*, 384 So. 3d 251, 257 (Fla. 4th DCA 2024).

Here, Plaintiff alleges that (1) it is a creditor of Defendants; (2) Defendants performed several unjustified transactions or disbursements to prevent Plaintiff from collecting debt owed to it; and (3) Cohen Anytime's bank statements reflect funds transferred to Tonic Investments, Cohen Jewels, Builes, and Cohen. *See* Compl. ¶¶ 42, 97. These allegations are sufficient to state a claim for fraudulent transfer. *See Sallah ex rel. MRT LLC v. Worldwide Clearing LLC*, 860 F. Supp. 2d 1329, 1334 (S.D. Fla. 2011) (finding allegations that defendants received fraudulent transfers of assets from the plaintiff's debtors were sufficient to state a claim for fraudulent transfer under Florida law).

Accordingly, Plaintiff states a viable claim for fraudulent transfer.

**F. Fraudulent Inducement**

Defendant Cohen argues that the Complaint fails to state a claim for fraudulent inducement because Plaintiff's allegations fall short of meeting Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, which governs fraudulent inducement claims. *See* Mot. [ECF No. 90] at 12–13; *see Oginsky v. Paragon Properties of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1368 (S.D. Fla. May 16, 2011). "To state a claim for fraudulent inducement under Florida law a plaintiff must allege that (1) the defendant made a false statement about a material fact; (2) the defendant knew the statement was false when he made it or was without knowledge of its truth of falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and (4) the plaintiff

justifiably relied on the false statement to his detriment." *Barrett v. Scutieri*, 281 Fed. App'x 952, 953 (11th Cir. 2008). Critically, "[f]raud in the inducement occurs where one party's ability to negotiate and make informed decisions as to the contract is undermined by the other party's pre-contractual fraudulent behavior." *Bradley Factor, Inc. v. United States*, 86 F. Supp. 2d 1140, 1145 (M.D. Fla. 2000) (citing *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 77 (Fla. 3d DCA 1997)).

Here, the Complaint fails to state a claim for fraudulent inducement because it does not allege, with the requisite specificity under Rule 9(b), that Cohen or Cohen Anytime made any misrepresentations or omissions prior to the execution of the Settlement Documents. More specifically, the Complaint states only that Cohen and Cohen Anytime executed the Settlement Documents but never intended to pay Plaintiff the agreed-upon $7.5 million and knew or should have known that they did not have the funds to pay the amount. *See* Compl. ¶¶ 29, 49, 110. These allegations do not point to any specific misrepresentation or omission made by Cohen or Cohen Anytime that induced Plaintiff to contract with them. At most, they establish Cohen and Cohen Anytime's state of mind when executing the Settlement Documents. And while it may suffice for Plaintiff to only generally allege Defendants' state of mind, Plaintiff must still specifically allege the "who, what, when, where, and how of the allegedly false statements[.]" *Mizzaro*, 544 F.3d at 1237. Moreover, that Cohen and Cohen Anytime agreed to sign and ultimately executed the Settlement Documents is insufficient to establish fraudulent inducement because the misrepresentation must have been made prior to the parties entering into a contract. *See Bradley Factor, Inc.*, 86 F. Supp. 2d at 1145 (noting a prior case from the Middle District of Florida where the court found "that the fraud committed was not in the inducement because the fraudulent

conduct was post-contractual," and finding that, in the instant case, the defendant's act of omission

was pre-contractual and, therefore, fraudulent inducement).

Finally, to the extent the purported fraudulent conduct is that Cohen and Cohen Anytime

failed to disclose their ability to pay Plaintiff, the Complaint does not allege that these Defendants

had a duty to do so or made partial disclosures with key omissions prior to contracting with

Plaintiff. Without such allegations, fraudulent inducement is not actionable. *See Taylor, Bean &*

*Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, No. 5:05-cv-260-Oc-GRJ, 2008 WL 3200286, at

*3 (M.D. Fla. Aug. 6, 2008) (in analyzing a fraudulent inducement claim, noting that "[i]n an arms-

length transaction, neither party owes a duty to the other to act for that party's benefit or protection,

or to disclose facts that the other party could have discovered through its own due diligence).

Accordingly, Plaintiff's fraudulent inducement claim fails as to Cohen.

**G. Civil Conspiracy**

Defendants contend that the Complaint fails to state a claim for civil conspiracy because it

does not establish that Defendants agreed to do an unlawful act. *See* Mot. [ECF No. 31] at 14–15;

Mot. [ECF No. 33] at 29–31; Mot. [ECF No. 76] at 10–11; Mot. [ECF No. 90] at 14–15.[11] To state

a claim for civil conspiracy, a plaintiff must allege "(1) an agreement between two or more parties,

(2) to do an unlawful act, (3) an overt act in furtherance of the conspiracy, and (4) damage to the

plaintiff as a result of the act performed in furtherance of it." *RMS Titanic, Inc v. Kingsmen*

*Creatives, Ltd.*, 579 Fed. App'x 779, 789 (11th Cir. 2014). "An agreement between two or more

parties occurs when there is an express or implied agreement of two or more persons to engage in

---

[11] Cohen also argues that "Babieca has failed to allege a target wrong or tort, on which a conspiracy claim can be made." Mot. [ECF No. 90] at 14. Not so. For example, count five of the Complaint asserts a claim for conversion against Cohen Anytime. *See* Compl. ¶¶ 84–89. Cohen Anytime does not challenge the legal sufficiency of this claim. *See generally* Mot. [ECF No. 33].

a criminal or unlawful act." *Gilison v. Flagler Bank*, 303 So. 3d 999, 1004 (Fla. 4th DCA 2020). To be held liable for civil conspiracy, a conspirator only needs to know of the scheme and assist in it in some way. *See id.*

Plaintiff states a viable claim against Defendants for civil conspiracy. As discussed above, Plaintiff alleges that Tonic Investments assisted Cohen Anytime by (1) producing fraudulent invoices, dated January and February 2023, for the sale of collateral used to secure the promissory note given by Cohen Anytime to Plaintiff and (2) engaging in unjustified transactions with Cohen Anytime, which were intended to make Cohen and Cohen Anytime appear insolvent or, in fact, become insolvent. *See* Compl. ¶¶ 39, 42, 45–46, 48. Moreover, according to Plaintiff, between October 2022 and March 2024, Cohen Jewels, Builes, and Cohen also participated in unjustified transactions with Cohen Anytime, and Cohen, through Cohen Anytime and Cohen Jewels, fraudulently transferred money to others, including Builes, so that Cohen and Cohen Anytime appeared insolvent or, in fact, became insolvent and so that Builes and others could purchase real property in South Florida ultimately held for the benefit of Cohen. *Id.* ¶¶ 42, 49–50. These allegations provide sufficient factual support to establish that Defendants had at least an implied agreement to commit unlawful acts and explain Defendants' roles in the conspiracy that ultimately harmed Plaintiff.[12]

Accordingly, Plaintiff states a viable claim for civil conspiracy.

## H. RICO

Defendants argue that the Complaint fails to sufficiently plead a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See* Mot. [ECF No. 31] at 15–17;

---

[12] As with Plaintiff's aiding and abetting conversion claim, Defendants do not argue that Rule 9(b)'s heightened pleading standard applies to the civil conspiracy claim, but even if it does, the Court finds that the foregoing allegations satisfy the Rule's "who, what, when, where, and how" requirements. *See Mizzaro*, 544 F.3d at 1237.

Mot. [ECF No. 33] at 14–21; Mot. [ECF No. 76] at 11–17; Mot. [ECF No. 90] at 14–16. The RICO statute, in relevant part, makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). For civil RICO claims, a plaintiff must allege "that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc*., 972 F.3d 1204, 1211 (11th Cir. 2020). Civil RICO claims must be pled with particularity, as required by Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007).

Relevant here, a plaintiff must plead with particularity that each defendant participated in a "pattern of racketeering activity." *Jackson v. Bellsouth Telecomms*., 372 F.3d 1250, 1264 (11th Cir. 2004). "To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Id.* (emphasis in original). While 18 U.S.C. § 1962(c) only requires "at least two acts of racketeering activity," the Supreme Court clarified that a plaintiff must establish either "close-ended" or "open-ended" continuity, which must extend longer than a period of "a few weeks or months[.]" *Id.* at 1265; *H.J. Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 242 (1989). In the Eleventh Circuit, "close-ended continuity cannot be met with allegations of schemes lasting less than a year." *Jackson*, 372 F.3d at 1266. To determine whether close-ended continuity has been established, courts consider: (1) the number of victims; (2) the number of racketeering

acts; (3) the variety of racketeering acts; (4) whether the injuries were distinct; (5) the complexity and size of the scheme; and (6) the nature or character of the enterprise. *See Magnifico v. Villanueva*, 783 F. Supp. 2d 1217, 1229 (S.D. Fla. 2011). By contrast, to establish open-ended continuity, a plaintiff must either show that (1) "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future" or that (2) "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J. Inc.*, 492 U.S. at 242.

Here, the Complaint fails to state a RICO claim because it does not adequately allege a "pattern of racketeering activity." "[W]here the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." *Jackson*, 372 F.3d at 1267. Here, Plaintiff's RICO claim is premised upon a series of allegedly fraudulent transfers made by Cohen Anytime to co-defendants for the purpose of defrauding Plaintiff out of $7.5 million worth of luxury watches:

> Defendants formed an association-in-fact enterprise … and participated in that enterprise's affairs through a pattern of racketeering activity consisting of numerous and repeated acts of interstate mail and wire fraud and money laundering to execute *a scheme to defraud Plaintiff* of $7,500,000.00 of luxury watches[.]" Compl. ¶ 124 (emphasis added).

In other words, the claim is singular in nature, relating to one victim (Plaintiff) and one scheme with one objective (defrauding Plaintiff out of $7.5 million). *See* Compl. ¶¶ 124–126. This is insufficient to establish a civil RICO claim. *See Cisneros*, 972 F.3d at 1216 (noting that multiple of acts of mail and wire fraud related to a single transaction with a single victim, at best, would constitute one predicate act and was thus insufficient to establish the pattern of racketeering activity required for RICO liability). To be sure, Plaintiff does not allege any facts to suggest a continuing threat of criminal activity or that this specific pattern of activity is Defendants' business practice.

Accordingly, Plaintiff fails to state a viable RICO claim.[13]

## I. RICO Conspiracy

Defendants also assert that the Complaint fails to allege a civil conspiracy to violate RICO. *See* Mot. [ECF No. 31] at 14–15; Mot. [ECF No. 33] at 21–22; Mot. [ECF No. 76] at 11–17; Mot. [ECF No. 90] at 14–16. Section 1962(d) of the RICO statute makes it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including section 1962(c). "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997). "[W]here a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails." *Rogers v. Nacchio*, 241 Fed. App'x. 602, 609 (11th Cir. 2007).

Here, Plaintiff does not provide any additional allegations for its RICO conspiracy claim to survive the motion-to-dismiss stage. Indeed, Plaintiff premises its conspiracy claim solely on the allegations supporting the substantive claim. *See* Compl. ¶ 133 ("In violation of 18 U.S.C. § 1962(d), Defendants have conspired to violate 18 U.S.C. § 1962(c)."); *id.* ¶ 136 ("Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d)."). Under *Rogers*, if there are no additional allegations supporting a RICO conspiracy claim, and the substantive RICO claim's allegations are insufficient, the conspiracy claim must fail. Such is the case here.

Accordingly, Plaintiff fails to state a viable RICO conspiracy claim.

---

[13] Because the Court finds that the Complaint fails to allege a pattern of racketeering activity, it need not address Defendants' arguments regarding the sufficiency of the Complaint's allegations regarding predicate acts, interstate commerce, and proximate cause. *See, e.g.*, Mot. [ECF No. 76] at 12–17.

## IV.     CONCLUSION

For the reasons set forth above, Defendants', Tonic Investments, Cohen Anytime, Cohen Jewels, Builes, and Cohen, Motions to Dismiss [ECF Nos. 31, 33, 76, 90] are **GRANTED IN PART AND DENIED IN PART** as follows:

1.      The Motions are **GRANTED** with leave to amend as to Count IV (replevin) as to Builes, Count IX (fraudulent inducement) as to Cohen, Count XI (violation of RICO) as to Tonic Investments, Cohen Anytime, Cohen Jewels, Builes, and Cohen, and Count XII (conspiracy to violate RICO) as to Tonic Investments, Cohen Anytime, Cohen Jewels, Builes, and Cohen. By **June 2, 2025**, Plaintiff must either: (1) amend these counts, consistent with Federal Rule of Civil Procedure 11, by filing an Amended Complaint or (2) advise the Court if it elects not to amend. Defendants must answer the remaining counts within **15 days** after Plaintiff's foregoing deadline.

2.      The Motions are **DENIED** as to Count VI (aiding and abetting conversion), Count VII (fraudulent transfers), Count VIII (civil theft), and Count X (civil conspiracy).

**DONE AND ORDERED** in Miami, Florida, on May 23, 2025.

_____
Paul C. Huck
United States District Judge

CC: All Counsel of Record